WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Margaret Marie Smith,<br><br>           Plaintiff,<br><br>v.<br><br>State of Arizona, a jural entity; Maricopa County, a jural entity; Arizona State Board of Education, a political subdivision of the State of Arizona; Maricopa County Community College District d/b/a/ Maricopa Community Colleges; Paradise Valley Community College; the Higher Learning Commission, an Illinois Corporation; Kelly Burton and John Doe Burton, husband and wife; Dr. Paul Dale and Jane Doe Dale, husband and wife; Dr. Denise Digianfilippo and John Doe Digianfilippo, husband and wife; and Dr. Mary Lou Mosley and John Doe Mosley, husband and wife,<br><br>           Defendants. | No. CV 11-1437-PHX-JAT<br><br>**ORDER** |

Pending before the Court are (1) the Motion to Dismiss Defendants State of Arizona and Arizona State Board of Education with Prejudice (Doc. 24) and (2) the Community College Defendants' Motion to Dismiss Counts One and Two (Doc. 37). The Court now rules on the Motions.

**I.     BACKGROUND**

In July 2011, Plaintiff filed a Complaint that contained the following allegations. Plaintiff enrolled in Paradise Valley Community College's (the "College") Introduction

to Ethics Course (the "Course"), which spanned from July 5, 2010 to August 5, 2010. (Doc. 1 at ¶ 27). The Course description represented that the course would cover "Major theories of conduct. Emphasis on normative ethics, theories of good and evil from Plato to present." (*Id.* at ¶¶ 27-28). Based on this description, the outline for the Course and Official Course Competencies, Plaintiff expected to learn about the ethical theories and historical context of the theories of a variety of different philosophers spanning the history of philosophy. (*Id.* at ¶ 29).

Plaintiff alleges that Kelly Burton ("Burton"), the instructor of the Course, failed to teach the Course according to the Course description and instead taught her own Christian worldview. (*Id.* at ¶ 30). Plaintiff alleges that "none of the theories of the philosophers set out in the course description were taught during the Philosophy Class." (*Id.* at ¶ 32).

The textbook for the Course was *Philosophical Foundation: A Critical Analysis of Basic Beliefs* (the "textbook"). (*Id.* at ¶ 30). Plaintiff alleges that the textbook and the sections taught from it are "totally inappropriate . . . for any course in the philosophy department, and in particular for the [Course] as described in the Course Description." (*Id.* at ¶ 33). Plaintiff alleges that the textbook was not approved by the Vice President of Academic Affairs prior to its first use in a Spring 2009 course and was first approved in October 2009. (*Id.* at ¶ 35).

Plaintiff alleges that, in August 2009, Barry Scheckner filed a grievance with the College complaining that the Spring 2009 Introduction to Ethics course contained unconstitutional religious instruction. (*Id.* at ¶ 36).

Plaintiff alleges that the Maricopa County Community College District ("MCCCD") has a policy of academic freedom, allowing faculty to "exercise their best effort to ensure topics are relevant to their subject" and allowing faculty to "determine curriculum and relevant subject matter for courses" and "recommend the appropriate pedagogy and textbooks, and other materials relevant to teaching their subject." (*Id.* at ¶ 39). Plaintiff alleges that Burton abused this policy because her religious instruction in

the Course "was not relevant or related to MCCCD's prescribed course competencies as laid out in the Course Description." (*Id.* at ¶ 40). Plaintiff alleges that Burton's religious instruction in the Course violates the First and Fourteenth Amendments to the United States Constitution and Article 2, Section 12 of the Arizona Constitution. (*Id.* at ¶ 42).

Plaintiff alleges that, because of the indoctrinating nature of Burton's teaching, Plaintiff felt inhibited from openly or fully participating in discussions and honestly answering exam questions out of fear of not receiving full credit (that would be earned with a God-based response). (*Id.* at ¶ 44). Plaintiff alleges that there is no secular purpose for Burton's teaching the Course in the manner described. (*Id.* at 54).

As a result, Plaintiff alleges that Burton[1] and Defendants Mosley and Dale have violated 42 U.S.C. § 1983 (Count One) because (1) Burton, acting under color of state law, taught the Course "solely to indoctrinate her students with her Christian worldview, thereby advancing and endorsing religion in violation of the First and Fourteenth Amendments" (*id.* at ¶ 47), abused her academic freedom under MCCCD's own policy (*id.* at ¶ 51), failed to cover the theories advanced in the Course description (*id.* at ¶ 52), and (2) Defendant Mosely, Vice President of Academic Affairs at the College, and Defendant Dale, President of the College, failed in their duties to ensure that Burton's instruction was taught in a constitutionally permissible manner (*Id.* at ¶¶ 48-50).

Plaintiff further alleges that Defendants State of Arizona, Maricopa County,[2] MCCCD, Higher Learning Commission,[3] and Paradise Valley Community College have violated the Establishment Clause of the First Amendment of the United States Constitution and Article 2, section 12 of the Arizona Constitution (Count Two) because (1) Defendants State of Arizona, Maricopa County, MCCCD, and Paradise Valley

---

[1] Defendants Kelly Ann Burton and David Perry Burton have previously been dismissed without prejudice. (*See* Doc. 51).

[2] Defendant Maricopa County has previously been dismissed with prejudice pursuant to a stipulation by the Parties. (*See* Doc. 43).

[3] Defendant Higher Learning Commission has previously been dismissed without prejudice. (*See* Doc. 51).

Community College have appropriated and/or applied public money and property to religious instruction in the form of the Course (*id.* at ¶ 58), and (2) Defendant Higher Learning Commission negligently accredited the College, knowing or having reason to know that the College permitted, encouraged, and supported class instruction that violated the Establishment Clause of the Arizona Constitution (*Id.* at ¶ 59). Plaintiff alleges that the actions of Defendants are injurious to the interests of Plaintiff because Defendants' actions subjected Plaintiff to potential official sanctions in the form of unacceptable grades if Plaintiff disagreed with the course content and exposed Plaintiff to unwanted endorsements of religion. (*Id.* at 64).

Plaintiff also alleges that Paradise Valley Community College is liable for breach of implied contract (Count Three) because the College failed to substantially provide the advertised instruction of the Course to Plaintiff, and thus, Plaintiff was denied the education for which she paid. (*Id.* at ¶¶ 69-70).

As a result of Counts One through Three, Plaintiff seeks compensatory, special and general damages, a declaratory judgment declaring that Defendants violated Plaintiffs' constitutional rights and 42 U.S.C. § 1983, and an injunction, enjoining the Defendants from violating the Establishment Clause. (*Id.* at 11-12).

Defendants the State of Arizona and the Arizona State Board of Education (collectively, the "State Defendants") move to dismiss the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants MCCCD, the College, Dr. Paul Dale, Dr. Denise Digianfilippo, and Dr. Mary Lou Mosley (collectively, the "Community College Defendants") also move to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.   THE STATE DEFENDANTS' MOTION TO DISMISS (Doc. 24)

In their Motion to Dismiss, the State Defendants argue that the Complaint should

be dismissed with prejudice against the State of Arizona (the "State") and the Arizona State Board of Education (the "Board") because the Eleventh Amendment bars this action against the State and the Board. In Response to the State Defendants' Motion to Dismiss, Plaintiff "does not oppose the dismissal" of the State Defendants, but argues that the claims against them should be dismissed without prejudice. (Doc. 39 at 1).

In Response, the State Defendants argue that Plaintiff plainly cannot bring her claims under 42 U.S.C. § 1983 in state court and thus, this action should be dismissed with prejudice against the State Defendants. Because the parties have agreed that the Eleventh Amendment bars this action in this Court and that this Court lacks jurisdiction over the State Defendants, the Court will not speculate as to whether there is an appropriate jurisdiction for Plaintiff's claims. Accordingly, the claims against the State Defendants are dismissed without prejudice to refiling in a Court of competent jurisdiction.[4]

### III. THE COMMUNITY COLLEGE DEFENDANTS' MOTION TO DISMISS COUNTS ONE AND TWO (Doc. 37)

The Community College Defendants argue that Counts One and Two of the Complaint should be dismissed because Plaintiff lacks standing to pursue declaratory and injunctive relief related to her federal and state constitutional claims. The Community College Defendants also argue that Count One should be dismissed because the individual defendants are entitled to qualified immunity for any claims made pursuant to 42 U.S.C. § 1983.

#### A. Declaratory and Injunctive Relief

The Community College Defendants argue that Plaintiff's requests for declaratory and injunctive relief fail because her constitutional claims are moot. In response, Plaintiff argues that, because she can go back to school at any time and take classes, even

---

[4] However, if Plaintiff inappropriately attempts to reassert the dismissed claims against the State Defendants in Federal Court, the State Defendants may move, in this case, to recover any attorneys' fees and costs incurred in having to defend the same action again.

- 5 -

after graduation, her claims for relief are not moot

Article III of the Constitution limits the Court's jurisdiction to "cases or controversies." *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 797 (9th Cir. 1999) (internal citation omitted). For the Court to have jurisdiction, a claim must be live throughout "all stages of the litigation process." *Id.* (internal citation omitted). If a claim "loses its character as a live controversy, then the action or claim becomes moot" and the Court lacks jurisdiction over the underlying dispute. *Id.* (internal citations omitted).

Accordingly, if the Court cannot remedy Plaintiff's alleged injury with injunctive or declaratory relief, Plaintiff's claims for those forms of relief are moot. *Id.* at 798 (internal citation omitted). However, even if claims for injunctive and declaratory relief are mooted, Plaintiff may still have a claim for monetary damages that would save the case from a complete mootness bar. *Id.*

Further, there is an exception to the mootness doctrine for issues that are "capable of repetition, yet evading review" in extraordinary cases where "(1) the duration of the challenged action is too short to be fully litigated before it ceases, and (2) there is a reasonable expectation that the plaintiffs will be subjected to the same action again." *Id.* (internal quotations and citations omitted).

In this case, it is undisputed that Plaintiff completed the Course on August 5, 2010 and, thus, it does not appear that the Court could remedy any injury she suffered through declaratory or injunctive relief. Plaintiff appears to argue that this case falls into the "capable of repetition, yet evading review" exception to the mootness doctrine because students seeking declaratory or injunctive relief would have to file and complete litigation before the semester (or quarter) ends. (*See* Doc. 48 at 4). However, because Plaintiff will not have to repeat the allegedly unconstitutional Course, she has not demonstrated that it is likely she will be subjected to the allegedly unconstitutional actions of Defendants again. *See, e.g., Doe*, 177 F.3d at 799 (holding that mootness exception did not apply where student-plaintiff had already graduated and would never again be compelled to participate in a prayer at his high school graduation ceremony). For

instance, Plaintiff does not allege that Defendants teach any other courses in a manner that violates the Establishment Clause, nor does Plaintiff allege that she has any reason to repeat the Course in the future. Accordingly, the "capable of exception, but evading review" exception does not apply and Plaintiff lacks standing to pursue her claims for injunctive and declaratory relief.

Plaintiff argues that, even if her claims for injunctive and declaratory relief are moot, Counts One and Two should not be dismissed in their entirety because her claim for damages is not mooted by her completion of the Course. In reply, Defendants argue that it is unclear what compensatory damages Plaintiff is seeking from her complaint or the legal basis for such damages and thus, such a conclusory request is not sufficient under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Because Defendants first raised this argument in their reply, although it was clear from Plaintiff's Complaint that she was seeking compensatory damages for Counts One and Two (*see* Doc. 1 at 11 ("Plaintiff . . . for each and every cause of action above, demands the following relief . . . compensatory . . . damages"), the Court will not consider this argument, as Plaintiff has not been given an opportunity to respond to it. *See Lopez v. I-Flow, Inc.*, No. CV 08-1063-PHX-SRB, 2011 WL 7424141, at *1 n.1 (D. Ariz. May 12, 2011) ("The Court does not address arguments first raised in reply because it deprives the nonmoving party the opportunity to respond.") (internal citation omitted).

### B.  Qualified Immunity

The Community College Defendants next argue that Plaintiff's Section 1983 claim (Count One) should be dismissed in its entirety because Dr. Dale, Dr. Digianfilippo, and Dr. Mosley (collectively, the "individual Defendants") are entitled to qualified immunity.

Section 1983 is a vehicle "by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Anderson v. Warner,* 451 F.3d 1063, 1067 (9th Cir. 2006) (internal citation omitted). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Id.* (internal citation omitted).

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. Al-Kidd*, __ U.S. __, 131 S.Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). "[L]ower courts have discretion to decide which of the two prongs of the qualified-immunity analysis to tackle first." *Id.* (internal citation omitted).

With regard to the second prong, a "Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Id.* at 2083 (internal quotations and citation omitted). While there need not be a case directly on point establishing the right, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* The Supreme Court has been explicit that the Court is "not to define clearly established law at a high level of generality," but must determine "whether the violative nature of particular conduct is clearly established." *Id.* at 2084 (internal citations omitted). In making this determination, the Court must consider that "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions [and] [w]hen properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Id.* at 2085 (internal quotation and citation omitted).

In this case, the Community College Defendants argue that Plaintiff has failed to meet the second prong of the qualified immunity analysis because "what an instructor can or cannot say about religion in an elective, college-level philosophy course is a gray area." (*See* Doc. 49 at 7). In response, Plaintiff argues that Defendants "absolutely could not set up a class at the college with the primary effect of advancing and/or indoctrinating students in the beliefs of a particular religious faith." (*See* Doc. 48 at 6). Plaintiff cites to

*Lemon v. Kurtzman*, 403, U.S. 602 (1976)[5] and contends that "Defendants have sufficient case authorities to put them on notice that allowing a class to be taught solely to advance a religious viewpoint is unconstitutional."  (Doc. 48).  The Court first notes that Plaintiff's arguments that the Course has a "primary effect of advancing and/or indoctrinating students in the beliefs of a particular religious faith" and that it was "taught solely to advance a religious viewpoint" are not well-pled factual allegations, but are legal conclusions. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (the Court need not accept as true a legal conclusion couched as a factual allegation).  Further, although Plaintiff contends that there is sufficient legal precedent establishing that Defendants could not teach an ethics class from a religious viewpoint, Plaintiff solely cites to *Lemon* to establish this point.

In response, the Community College Defendants cite to numerous cases to demonstrate that the law surrounding what constitutes an Establishment Clause violation in a college classroom is unclear.  The Court agrees that, while there is precedent establishing that certain religious practices in a classroom are forbidden by the Establishment Clause,[6] the exact contours of what is allowed when using religious

---

[5] "Under *Lemon,* a government act is consistent with the Establishment Clause if it: (1) has a secular purpose; (2) has a principal or primary effect that neither advances nor disapproves of religion; and (3) does not foster excessive governmental entanglement with religion." *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 971-973 (9th Cir. 2011) (internal citation omitted).

[6] *See California Parents for Equalization of Educ. Materials v. Noonan*, 600 F. Supp. 2d 1088, 1116 (E.D. Cal. 2009) ("[C]ourts have held a number of activities to be violations of the Establishment Clause, including: (1) inviting clergy to offer invocation and benediction prayers at formal graduation ceremonies for high schools and middle schools (*Lee v. Weisman,* 505 U.S. 577 (1992); (2) daily readings from the Bible (*Sch. Dist. of Abington Township v. Schempp,* 374 U.S. 203 (1963)); (3) daily recitation of the Lord's Prayer (*id.*); (4) distributing Gideon Bibles to fifth grade public school students (*Berger v. Rensselaer Central Sch. Corp.,* 982 F.2d 1160, 1171 (7th Cir. 1993)); (5) posting the Ten Commandments in every classroom (*Stone v. Graham,* 449 U.S. 39 (1981)); (6) requiring the teaching of evolution science with creation science or not at all (*Edwards,* 482 U.S. 578 (1987)); (7) beginning school assemblies with prayer (*Collins v. Chandler Unified Sch. Dist.,* 644 F.2d 759 (9th Cir. 1981)); (8) teaching a Transcendental Mediation course that includes a ceremony involving offerings to a deity (*Malnak v. Yogi,* 592 F.2d 197 (3rd Cir. 1979)); (9) teaching of weekly religious education classes by private religious educators in public elementary school classrooms (*Vaughn v. Reed,* 313

materials in a classroom and teaching from a religious perspective are not entirely clear.

In her Complaint, Plaintiff alleges that the chapters of the textbook used in the Course are "theological and therefore totally inappropriate as the primary textbook or any course in the philosophy department . . ." (Doc. 1 at ¶ 33). However, just because a book, or chapters within a book, that are used in a classroom are theological in nature, the use of the book in a classroom does not automatically result in a violation of the Establishment Clause. *See, e.g.*, *Stone v.* Graham, 449 U.S. 39, 42 (1980) ("the Bible may constitutionally be used in an appropriate study of history, civilization, ethics, comparative religion, or the like.") (citing *Schempp*, 374 U.S. at 225); *Grove,* 753 F.2d at 1540 (Canby, J. concurring) ("Luther's 'Ninety–Nine Theses' are hardly balanced or objective, yet their pronounced and even vehement bias does not prevent their study in a history class' exploration of the Protestant Reformation, nor is Protestantism itself 'advanced' thereby.").[7] Moreover, Plaintiff has not cited to any cases where a court struck down a school's use of a particular book on Establishment Clause grounds. Accordingly, the Court cannot say that the use of *Philosophical Foundation: A Critical Analysis of Basic Beliefs* as a textbook in a college-level Ethics Course would be clearly-violative of the Establishment Clause[8] and, thus, the individual Defendants are entitled to Qualified Immunity with respect to the use of that textbook in the Course.

Likewise, it is not clear to the Court from Plaintiff's general allegations that the

---

F. Supp. 431 (W.D.Va. 1970)); and (10) teaching of the Bible, for an express religious purpose, in public elementary and high schools by private religious educators (*Herdahl v. Pontotoc County Sch. Dist.,* 933 F. Supp. 582 (N.D. Miss. 1996)).").

[7] *See also Noonan*, 600 F.Supp.2d at 1117 (observing that "Courts have not been inclined to find an Establishment Clause violation . . . with respect to use of certain books, including novels, textbooks and reading series, in a public school curriculum" and collecting cases finding no Establishment Clause violation when teaching about religion is incorporated into a larger secular curriculum).

[8] In her Complaint, Plaintiff does not provide any examples of Class Exercises or readings from the book that would violate the Establishment Clause. Rather, she makes generalized assertions that teaching of "Surrendra Gangadean's ten Moral Laws was not directly relevant to objective, religiously neutral presentation." The Court cannot determine from these conclusory allegations that using the textbook is clearly violative of the Establishment Clause.

individual Defendants' failure to ensure that the Course "was not taught in a constitutionally impermissible manner"[9] amounts to a clearly established Establishment Clause violation. Plaintiff's conclusory allegations that the class was taught in a constitutionally impermissible manner because religion was discussed are not sufficiently based on facts so that the Court could discern that the individual Defendants violated a clearly established Constitutional right. *See Brown v. Woodland Joint Unified Sch. Dist.*, 27 F.3d 1373, 1379 (9th Cir. 1994) ("If an Establishment Clause violation arose each time a student believed that a school practice either advanced or disapproved of a religion, school curricula would be reduced to the lowest common denominator, permitting each student to become a 'curriculum review committee' unto himself or herself.").

The reference of religion in a classroom does not automatically violate the Establishment Clause. *See Johnson*, 658 F.3d at 970, n. 23 ("The Establishment Clause does not wholly preclude the government from referencing religion . . . Not only would such a drastic and draconian requirement raise substantial difficulties as to what might be left to talk about, but . . . it would require that we ignore much of our own history and that of the world in general . . . For instance, one could not discuss Egyptian pyramids, Greek philosophers, the Crusades, or the Mayflower if even incidental or colloquial references to objects or individuals of religious significance were constitutionally taboo."); *Brown*, 27 F.3d at 1377 (Court decided that it need not determine which religious rituals can be employed in public school curriculum, but noted that "having children act out a ceremonial American Indian dance for the purpose of exploring and learning about American Indian culture may be permissible even if the dance was [a]

---

[9] Plaintiffs' generalized, conclusory allegations that the class was "taught in a constitutionally impermissible manner" and that the purpose of the class was "solely to indoctrinate" students with a "Christian worldview, thereby advancing and endorsing religion in violation of the First and Fourteenth Amendments" give the Court no basis to properly analyze the violative nature of the exact conduct alleged because Plaintiff fails to provide any factually specific examples of how the Course was taught from a "Christian worldview" that violated the "First and Fourteenth Amendments."

- 11 -

religious ritual. Similarly, a reenactment of the Last Supper or a Passover dinner might be permissible if presented for historical or cultural purposes.").

Moreover, Courts have long emphasized the importance of academic freedom in deciding the appropriate curriculum for the classroom. *See Schempp,* 374 U.S. at 300 (Brennan, J., concurring) (noting that teaching many social sciences requires mentioning religions, but decisions about how religion is used "are matters which the courts ought to entrust very largely to the experienced officials who superintend our Nation's public schools. They are experts in such matters, and we are not."); *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 988 (9th Cir. 2011) (stating "We have no doubt that the freedom to have a frank discussion about the role of religion in history is an integral part of any advanced history course."); *Noonan*, 600 F. Supp. 2d at 1117 (noting that school boards have "broad discretion" in selecting "public school curriculum.").

Plaintiff has not pointed to any specific actions by Defendants that obviously violated a clearly established right under the Establishment Clause or to any cases indicating that a college level Ethics course cannot be taught with reference to a specific religion and, thus, the Court cannot find that the Individual Defendants would have been aware that their conduct was in violation of a clearly established constitutional right. *See Farnan*, 654 F.3d at 989 ("But without any cases illuminating the dimly perceived line of demarcation between permissible and impermissible discussion of religion in a college level history class, we cannot conclude that a reasonable teacher standing in Corbett's shoes would have been on notice that his actions might be unconstitutional.") (internal quotations and citations omitted).

Accordingly, the Court finds that the individual Defendants are entitled to qualified immunity on Plaintiff's Section 1983 claim (Count One) and the individual Defendants are dismissed from this case. Further, because Count One is solely asserted against the individual Defendants, the Community College Defendants' Motion to Dismiss is granted with regard to Count One of the Complaint.

### IV. CONCLUSION

Accordingly, the claims against the State of Arizona and the Arizona State Board of Education are dismissed without prejudice to Plaintiff re-filing in a court of competent jurisdiction.

Further, Defendants Digianfilippo, Mosley, and Dale are entitled to qualified immunity on the claims in Count One; because there are no remaining Defendants in Count One, Count One is dismissed. Further, Plaintiff's claims for injunctive and declaratory relief in Count One and Count Two are dismissed.

Accordingly, the remaining claims of Plaintiff's Complaint are: (1) the claims in Count Two as asserted against Maricopa Community College District and Paradise Valley Community College for monetary relief and (2) Count Three (Breach of Contract), as asserted against Paradise Valley Community College.

Based on the foregoing,

**IT IS ORDERED** that the Motion to Dismiss Defendants State of Arizona and Arizona State Board of Education with Prejudice (Doc. 24) is granted in part and denied in part as set forth herein.

Defendants State of Arizona and Arizona State Board of Education are hereby dismissed.

**IT IS FURTHER ORDERED** that the Community College Defendants' Motion to Dismiss Counts One and Two (Doc. 37) is granted in part and denied in part as follows:

Plaintiff's claims for declaratory and injunctive relief are hereby dismissed because Plaintiff lacks standing to pursue those claims.

Count One of the Complaint is hereby dismissed.

////
///
//
/

1   Defendants Dr. Denise Digianfilippo, John Doe Digianfilippo, Dr. Mary Lou
2   Mosely, John Doe Mosely, Dr. Paul Dale, and Jane Doe Dale are hereby dismissed.
3   Dated this 31st day of July, 2012.

James A. Teilborg
United States District Judge